# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 726 | **DATE** | 4/26/2004 |
| **CASE TITLE** | UltimateMeasures, Inc. vs. Andrew C. Bohnengel | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants Motion to Dismiss and in the Alternative Transfer Venue

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum opinion, Defendants' Motion to Dismiss and in the Alternative Transfer Venue [Docs. 13-1, 13-2] is denied in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | APR 27 2004 date docketed | |
| ✓ | Notified counsel by telephone. | | | 21 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 4-26-04 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| jar(lc) | courtroom deputy's initials | | Date/time received in central Clerk's Office | Par mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ULTIMATEMEASURES, INC., et al., | ) |
| | ) No. 04 C 0726 |
| Plaintiffs, | ) |
| | ) HONORABLE DAVID H. COAR |
| v. | ) |
| | ) |
| ANDREW C. BOHNENGEL, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On January 29, 2004, Plaintiffs UltimateMeasures, Inc., George P. Harris, and U.S. Tape Company, Inc., filed an eleven-count Complaint in this Court alleging that Defendants Andrew C. Bohnengel and the Perfect Measuring Tape Company committed various acts of fraud, conversion, unfair competition, and patent infringement relating to the manufacture of a unique tape measure. On March 8, 2004, Defendants Perfect Measuring Tape Company and Andrew Bohnengel filed a motion to dismiss the case for want of personal jurisdiction and improper venue or, in the alternative, to transfer venue to the Northern District of Ohio. Defendants' motion has now been fully briefed and is ripe for decision. For the reasons set forth in this opinion, Defendants' Motion is denied in its entirety.

## I.  FACTUAL BACKGROUND[1]

Plaintiffs in this lawsuit are UltimateMeasures, Inc., George P. Harris, and U.S. Tape

---

[1] Most of the facts are taken directly from the Complaint, which is appropriate at this stage. The jurisdictional facts and those related to appropriateness of the venue can come either from the Complaint or from affidavits and other evidence submitted in support of the jurisdictional allegations.

1

Company. Plaintiff UltimateMeasures, Inc. ("UltimateMeasures") is a Florida Corporation with its principal place of business in Palm Harbor, Florida. (Comp. ¶1.) Plaintiff George P. Harris ("Harris") is an individual who is a resident and citizen of Florida. (Comp. ¶2) Plaintiff U.S. Tape Company ("U.S. Tape") is a Pennsylvania Corporation with its principal place of business in Patchogue, New York. (Comp. ¶3) Defendant Andrew C. Bohnengel ("Bohnengel") is an individual who is a resident and citizen of Ohio. (Comp. ¶4) Defendant Perfect Measuring Tape Company ("Perfect Measuring") is an Ohio Corporation with its principal and only place of business in Toledo, Ohio. (Bohnengel Aff., ¶2.)

On January 3, 2002, Harris contacted Defendant Bohnengel at Perfect Tape to discuss manufacturing possibilities for an invention of his relating to tape measures. (Comp. ¶13.) Bohnengel suggested that Harris and Perfect Tape enter into a confidentiality agreement before Harris disclosed the invention to him. (Id.) Bohnengel faxed a confidentiality agreement to Harris that day. Also on January 3, 2002, Harris became aware that William Clontz ("Clontz") was attempting to design an oblong tape measure that would be easier to grip than traditional tape measures. (Comp. ¶14.)

Harris contacted Bohnengel on January 7, 2002 about designing an oblong tape measure. (Comp. ¶15.) Harris faxed the confidentiality agreement back to Bohnengel at Perfect Tape on January 7, 2002. (Comp. Ex. A.) On January 12, 2002, Harris met with Clontz in North Carolina. (Comp. ¶ 17.) During their meeting, they conceived a definite and permanent idea of a "novel, oblong, retractable tape measure which fits easily in the hand". (Id.) Harris formed Plaintiff UltimateMeasures, Incorporated in January 2002 to develop the tape measure that he and Clontz had invented. (Comp. ¶ 19.) On January 13, 2002, Harris met with Bohnengel at the Toledo Airport. Harris gave details relating to the internal mechanism and the external case of the

oblong-shaped tape measure that he and Clontz had invented. (Comp. ¶ 20.)

In March 2002, Harris and UltimateMeasures entered into a development agreement with Bohnengel and Perfect Measuring. (Comp. ¶21.) The development agreement specified that Perfect Measuring would help create a working prototype of the oblong-shaped tape measure using a Chinese manufacturer, The Great Wall Factory ("Great Wall"), with which Perfect Measuring had an ongoing business relationship. (Comp. ¶ 21.) Perfect Measuring would also have Great Wall create one or more molds which could be used to manufacture the oblong-shaped tape measures. (Comp. ¶22.) UltimateMeasures paid Perfect Measuring over $8,000 for the prototype and the molds. (Comp. ¶26.) After the exchange of some inadequate prototypes, Perfect Measuring delivered to Harris a prototype of the oblong-shaped tape measure that embodied the invention in August 2002. (Comp. ¶27–28.)

Harris and UltimateMeasures displayed the prototype of the oblong-shaped tape measure at the National Hardware Show in Chicago, Illinois, later in August 2002. (Comp. ¶29.) Defendant Bohnengel attended the Hardware show, and answered questions about the oblong-shaped tape measure. (Comp. ¶30.) After the show, UltimateMeasures agreed to buy 10,000 oblong-shaped tape measures through Perfect Measuring. (Comp. ¶31.) Negotiations between UltimateMeasures and Perfect Measuring to establish an exclusive manufacturing contract broke down over the price of the oblong-shaped tape measures. (Comp. ¶33.)

On June 28, 2002, Bohnengel applied for a design patent covering the exterior case of the oblong-shaped tape measure. (Comp. ¶35.) Bohnengel was granted U.S. design patent D 473,807 (the "'807 patent"). (Id.) Shortly thereafter, Harris and Clontz applied for a design patent covering the same invention. (Comp. ¶37.) When Harris and Clontz learned of

3

Bohnengel's patent, they notified the Patent and Trademark Office (PTO) and withdrew their application. (Comp. ¶37–38).

In August 2003, Defendant Bohnengel attended the National Hardware Show in Chicago on behalf of Perfect Measuring. Great Wall had two adjacent booths at the 2003 Hardware Show. Among the products in the Great Wall booths was the Perfect Grip tape measure that Great Wall manufactured for Defendant Perfect Measuring. Plaintiffs assert that the Perfect Grip tape measure infringes on their intellectual property rights as it is allegedly based on the oblong-shaped tape measure that was the subject of their previous negotiations.

Plaintiffs filed their eleven-count Complaint in this Court on January 29, 2004. Defendants' Motion presently before the Court seeks to dismiss Plaintiffs' Complaint for want of personal jurisdiction, improper venue, and/or forum non conveniens. The Court will address each issue separately below.

## II.    PERSONAL JURISDICTION

Plaintiff's Complaint in this case presents alleged violations of both federal and state law. This Court "has personal jurisdiction [over defendants]. . . 'only if a court of the state in which it sits would have such jurisdiction.'" RAR, Inc. v. Turner Diesel Ltd, 107 F.3d 1272, 1275 (7th Cir. 1997)(quoting Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir. 1995)). The Court must undertake a two-step analysis to assess whether the Illinois courts would have personal jurisdiction. First, the Court must examine Illinois law to determine whether it authorizes personal jurisdiction over Defendants. If Illinois law does authorize personal jurisdiction, the Court must proceed to examine due process requirements to determine whether the Constitution permits the exercise of personal jurisdiction over these Defendants. When evaluating a challenge for lack of personal jurisdiction, the Plaintiff "has the burden of demonstrating the

4

existence of personal jurisdiction." Id. at 1276.

### A. Is there personal jurisdiction under Illinois law?

Illinois state law crafts for itself the broadest possible jurisdiction in its long-arm jurisdiction statute, 735 ILCS §5/2-209. The statute provides, in pertinent part, that Illinois courts have jurisdiction over any cause of action arising from: the transaction of business in Illinois, 735 ILCS §5/2-209(a)(1); the commission of a tortious act in Illinois, 735 ILCS §5/2-209(a)(2); the breach of a fiduciary duty in Illinois, 735 ILCS §5/2-209(a)(11); and to the full extent that the Constitution permits, 735 ILCS §5/2-209(c).

Although Defendants do transact some business in Illinois, the present lawsuit does not arise from the transaction of business in Illinois as that term is used in section (a)(1) of the jurisdictional statute. Plaintiffs have not asserted, nor could they, that this lawsuit arises from the business that Defendants conduct in Illinois on an annual basis. Sales that Defendant Perfect Measuring conducts to Illinois may become relevant when assessing whether Perfect Measuring has sufficient "minimum contacts" with Illinois for jurisdiction to be constitutional, but those sales do not provide a basis to assert jurisdiction under 735 ILCS §5/2-209(a)(1).

Plaintiffs assert that Defendants committed tortious acts and breached fiduciary duties in the state of Illinois, which would support jurisdiction under sections (a)(2) and (a)(11) of the statute. According to the evidence that both parties have submitted, Defendant Bohnengel was in Illinois twice, in August 2002 and August 2003. On both occasions, he drove from Toledo, Ohio to Chicago, Illinois to attend the National Hardware Show. At the 2002 National Hardware Show, UltimateMeasures had a booth that Plaintiff Harris was staffing. Bohnengel went to the show to deliver additional prototypes of an oblong tape measure to Harris at the UltimateMeasures booth. Nothing in the record suggests that he committed a tortious act or

5

breached a fiduciary duty during his visit to the 2002 show.

At the 2003 National Hardware Show, Great Wall, Defendants' Chinese manufacturer, had two adjacent booths to display its products. Among the products that Great Wall displayed were three or four products it was manufacturing for Defendant Perfect Measuring. Among those three or four products was the Perfect Grip measuring tape that Plaintiffs allege infringes their intellectual property rights. According to Bohnengel's deposition testimony, the 2003 Hardware Show was the first place that Defendant Perfect Measuring displayed the allegedly infringing product to the public. (Bohnengel Dep. at 59-60.) Perfect Measuring introduced the product at the show because "it's an international show, there's a lot of exposure, . . . they highlight new products" and Bohnengel thought it would help business. (Id. at 60.) Assuming that the design of the Perfect Grip measuring tape was illicitly taken from Plaintiffs' design (as the Court must at this stage), Defendants' behavior at the 2003 National Hardware Show suggests the commission of the tort of misappropriation of trade secrets. Moreover, to the extent that Plaintiffs' design was covered by the confidentiality agreement between the parties, Defendants' behavior at the 2003 National Hardware Show suggests a breach of the duty of non-disclosure that agreement imposes. Either of these bases are sufficient to establish that the Illinois statute authorizes the exercise of personal jurisdiction over the Defendants, provided such jurisdiction is consistent with constitutional requirements.

### B. Is it Constitutional to exercise personal jurisdiction in this case?

There are two types of personal jurisdiction that are consistent with the requirements of the Due Process Clauses of the Fifth and Fourteenth Amendments -- general personal jurisdiction and specific personal jurisdiction. In order to establish that a defendant is subject to general personal jurisdiction in a given forum, a plaintiff must show that the defendant has

6

"continuous and systematic general business contacts" with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). In order to establish that a defendant is subject to specific personal jurisdiction in a given forum, a plaintiff must show that the defendant has purposefully established sufficient minimum contacts within the forum state that make it reasonable and fair to subject the defendant to suit in the forum state. See RAR, 107 F.3d at 1276.

Plaintiffs assert that the Defendants' activities give rise to both general and specific personal jurisdiction in Illinois. As a practical matter, if the Defendants are subject to specific personal jurisdiction, there will be no need for the Court to assert general personal jurisdiction over them. The Court will begin its analysis with specific personal jurisdiction. Only if that is lacking, will it assess whether Defendants are subject to general personal jurisdiction in Illinois.

Defendants assert that coming to Illinois for national trade shows has been insufficient to support personal jurisdiction in previous Illinois cases. See Berthold Types Ltd. v. European Mikoraf Corp., 102 F. Supp. 2d 928, 934 (N.D. Ill. 2000); Stein v. Rio Parsiminia Lodge, 695 N.E.2d 518, 523 (Ill. App. Ct. 1998); Radosta v. Devil's Head Ski Lodge, 526 N.E.2d 561, 565 (Ill. App. Ct. 1988). Defendants neglect to mention that none of these trade show cases involved tortious activity at the trade show itself. See Stein, 695 N.E.2d at 523-24 ("Participation in trade shows is not sufficient for 'doing business'"); Radosta, 526 N.E.2d at 565 ("The sole issue is whether defendants were 'doing business' in Illinois sufficient to confer jurisdiction on our courts."); Berthold Types Ltd., 102 F. Supp. 2d at 934 ("plaintiff does not allege that defendants sold any infringing products in Chicago"). In this case, the Defendants introduced the allegedly infringing product to the marketplace at the national trade show. While the development of the product took place elsewhere, the Defendants chose to make the initial public display of this

7

product in Illinois. It is that choice and the allegedly tortious nature of Defendants conduct while at the trade show that establishes specific personal jurisdiction in this case. Under these circumstances, exercising personal jurisdiction over the Defendants comports with the constitutional requirements.

## III. VENUE

Defendants also seek to dismiss Plaintiff's Complaint for improper venue. In this case, subject-matter jurisdiction is founded in part on diverse citizenship of the parties and in part on alleged violations of federal patent and unfair competition law. Consequently, the venue requirements are set forth in 28 U.S.C. §1391(b):

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

In addition, 28 U.S.C. §1391(c) provides that corporate defendants, such as Defendant Perfect Measuring, are deemed to reside "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."[2]

Even though Perfect Measuring is deemed to reside in the Northern District of Illinois, because Defendant Bohnengel resides in another state, venue is only proper in this district if "a substantial part of the events or omissions giving rise to the claim occurred" here. As noted above, Defendants introduced the allegedly infringing product to the marketplace in this district.

---

2. Plaintiff's Complaint also alleges that venue is proper here based on the special venue provision for patent infringement actions, 28 U.S.C. §1400(b). Because Perfect Measuring is deemed to reside in this district for venue purposes, see 28 U.S.C. §1391(c), venue would also be proper here under 28 U.S.C. §1400(b).

The central thrust of the Complaint is that the Defendants stole Plaintiffs' invention and brought it to market without their knowledge or consent. The introduction of the infringing product to the marketplace constitutes a substantial part of the events or omissions giving rise to Plaintiffs' claims. This remains true even though Defendants provide deposition evidence that they made no sales at the 2003 National Hardware Show. Consequently, venue is proper in this district.

## IV. MOTION TO TRANSFER VENUE

A motion to transfer venue is governed by 28 U.S.C. §1404(a). Under Section 1404(a), a federal district court may "for the convenience of the parties and witnesses and in the interest of justice ... transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). The party seeking to transfer venue "has the burden of establishing, by reference to particular circumstances, that the [proposed] transfer forum is clearly more convenient" than the transferring court. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219—20 (7th Cir. 1986). In making a transfer determination, the court must consider both the private interests of the parties and the public interests involved. Factors for assessing the private interests include: (1) plaintiff's choice of forum; (2) site of the material events; (3) availability of evidence in each forum; (4) convenience of the parties; and (5) convenience of the witnesses. Amoco Oil. Co. v. Mobil oil Corp., 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000). Public interest factors "relate to the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." Von Holdt v. Husky Injecting Molding System, Ltd., 887 F. Supp. 185, 188 (N.D. Ill. 1995). The Court will address each factor individually below and then it will assess whether Defendants have met their burden of establishing that transfer would be "clearly more convenient."

### A. Private Interests

### 1. Plaintiff's Choice of Forum

Where the Plaintiffs' forum choice is their home forum, it is entitled to considerable weight. See Symons Corp v. Southern Forming & Supply, 954 F. Supp. 184, 186 (N.D. Ill. 1997). Where, as here, the Plaintiffs' choice of forum is a foreign district, the weight owing to the Plaintiffs' choice diminishes, but Plaintiff's choice is still entitled to some deference.

### 2. Site of Material Events

Plaintiffs assert that most of the material events occurred in Chicago. As the Court noted above in the discussions of personal jurisdiction and venue, a substantial portion of the events that gave rise to this lawsuit occurred in Chicago at the National Hardware Show in 2003. There are three other sites that material events took place: Florida; Toledo, Ohio; and China. Plaintiff Harris invented the product from his home in Florida. He then engaged in discussions with Defendants, who were (and are) located in Toledo, Ohio, about the invention. Those discussions were occurring simultaneously in Florida and Toledo. Harris then had one material meeting with Defendants at the airport in Toledo, Ohio. Then the parties met at the trade show in Chicago in 2002. Between the 2002 trade show and the 2003 trade show, most of the material events, including the development and manufacture of the allegedly infringing tape measure took place either in Toledo, Ohio or in China (which is an impracticable venue).

### 3. Availability of Evidence

The non-testimonial evidence in this case consists of documents and some number of hand-held tape measures. While some, perhaps most, of the documents are housed in Toledo, Ohio with Perfect Measuring, none of the evidence in this case would present a significant transportation problem.

### 4. Convenience of the Parties

Plaintiffs reside or have their principal place of business in either Florida or New York. Litigating in either Toledo, Ohio or Chicago, Illinois will require approximately the same amount of travel. Because Chicago has two major airports, it would be slightly more convenient for Plaintiffs to litigate in Chicago. It would clearly be much more convenient for Defendants to litigate in Toledo, Ohio, their home forum.

### 5. Convenience of the Witnesses

When the Court considers convenience of the witnesses, it considers primarily the convenience of non-party witnesses. It is axiomatic that parties are required to secure party witnesses wherever litigation proceeds; the relative convenience of the party witnesses is accounted for in the convenience of parties factor. Defendants assert that it would be more convenient for Defendant Bohnengel (a party), potential witness Betty Marlow (an employee of Defendant Perfect Measuring), and Bohnengel's wife if the case were transferred to the Northern District of Ohio. Of these three witnesses that are located in Toledo, only Bohnengel's wife is a non-party witness. During Bohnengel's deposition, he testified that his wife might be needed to testify about her observances of his activities at the Ultimatemeasures booth during the 2002 National Hardware Show. (Bohnengel Dep. at 105.) Given the facts as alleged, this testimony appears to be of limited utility in this case.

In addition to these three witnesses that reside in Toledo, the parties have mentioned the following non-party witnesses: a representative of Great Wall named Fang Ren who lives in Vancouver, British Columbia; "individuals and engineers" who work for Great Wall who live in Ningbo, China; Clontz' widow and executrix who lives in North Carolina; and an independent tool and tape measure distributor named Harold Weiss who lives in Northbrook, Illinois. The Great Wall witnesses and Clontz' widow would all have to travel a significant distance to either

11

forum. Again, Chicago's two major airports would make it a slightly more convenient forum for these witnesses. Mr. Weiss, however, is a resident of this district. He spoke with Bohnengel at the 2003 National Hardware Show and later received a sample of the allegedly infringing tape measure from Perfect Measuring. It would be much more convenient for him if the litigation remained in Chicago.

### B.    Public Interest Factors

Defendant asserts that cases proceed more quickly in the Northern District of Ohio. In 2002, cases in the Northern District of Ohio proceeded from filing to trial in 17.0 months in the whereas they proceeded from filing to trial in 25.3 months in this court. Either forum is equally well-equipped to confront the federal law questions in this case. The confidentiality agreement the parties entered into specifies that Ohio law will govern its application; the Ohio court is undoubtedly more familiar with Ohio law than this court. It is unclear at this stage what state's law will apply to the other state law claims at issue in this case. Since there was allegedly a tort committed in Illinois at the 2003 trade show, Illinois retains an interest in having its citizens empaneled as jurors on torts committed in its borders.

### C.    Analysis of these factors

Synthesizing these factors, none of them make a compelling case to transfer this case to the Northern District of Ohio. It would be more convenient for the Defendant if the case were transferred, but the deference due to Plaintiff's choice of forum plus the slight advantage of Chicago in convenience for the Plaintiff counsels for the case to remain here. It would be more convenient for the non-party witnesses for this case to remain in the Northern District of Illinois. Significant material events occurred both here and in Ohio, and litigation in either forum would

have little to no effect on the availability of non-testimonial evidence. The public interest factors weigh slightly in favor of a transfer based on the slight advantage in proceeding to trial and the Ohio law provision, but the case for a transfer is not especially compelling on those grounds.

In this case, it appears that both forums have advantages and disadvantages. Where the arguments favoring a transfer are just as compelling as the arguments against a transfer, the Defendant has not met its burden of demonstrating that the receiving court would be "clearly more convenient" than this Court. Consequently, the motion to transfer is denied.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss or, in the alternative, to Transfer is denied in its entirety.

**ENTER:**

_____
**David H. Coar**
**U.S. District Court Judge**

**Date: April 22, 2004**